## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENERAL WIRELESS OPERATIONS INC. | ) | Case No. 17-10506 (BLS) |
| DBA RADIOSHACK et al.,[1] | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF GENERAL WIRELESS OPERATIONS INC. DBA RADIOSHACK AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

NOTHING CONTAINED IN THE DEBTORS' PLAN OF REORGANIZATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST. THIS PLAN IS SUBJECT TO THE BANKRUPTCY COURT'S APPROVAL AND CERTAIN OTHER CONDITIONS. ACCEPTANCES OR REJECTIONS WITH RESPECT TO THIS PLAN MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED SOLICITATION PROCEDURES AND CONDITIONALLY APPROVED AN ACCOMPANYING DISCLOSURE STATEMENT. ANY SOLICITATION OF THIS PLAN WILL OCCUR ONLY IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES AND BANKRUPTCY LAWS.

**PEPPER HAMILTON LLP**
David M. Fournier (DE 2812)
Michael J. Custer (DE 4843)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: fournierd@pepperlaw.com
      custerm@pepperlaw.com

**JONES DAY**
Scott J. Greenberg (admitted *pro hac vice*)
250 Vesey Street
New York, NY 10281-1047
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: sgreenberg@jonesday.com

Mark A. Cody (admitted *pro hac vice*)
77 West Wacker
Chicago, IL 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: macody@jonesday.com

*Attorneys for Debtors and Debtors in Possession*
    Dated: September 6, 2017

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: General Wireless Operations Inc. dba RadioShack (8040); General Wireless Holdings Inc. (4262); General Wireless Inc. (9245); General Wireless Customer Service Inc. (5813). The notice address for all of the Debtors is: 300 RadioShack Circle, Fort Worth, TX 76102-1964.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
    OF TIME AND GOVERNING LAW ........................................................ 1

    A.    Defined Terms. ......................................................................... 1
    B.    Rules of Interpretation. ........................................................... 17
    C.    Computation of Time. ............................................................. 17
    D.    Governing Law. ...................................................................... 17
    E.    Reference to Monetary Figures................................................ 18
    F.    Reference to the Debtors or the Reorganized Debtor. ............. 18

ARTICLE II. ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS ........ 18

    A.    Administrative Claims. ........................................................... 18
    B.    Priority Tax Claims.................................................................. 20
    C.    Statutory Fees.......................................................................... 20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
    INTERESTS ........................................................................................... 20

    A.    Classification of Claims and Interests...................................... 20
    B.    Summary of Classification....................................................... 21
    C.    Treatment of Claims and Interests. ......................................... 21
    D.    Special Provision Governing Claims. ...................................... 26
    E.    Elimination of Vacant Classes. ............................................... 26
    F.    Acceptance or Rejection of the Plan. ...................................... 26
    G.    Confirmation Pursuant to Sections 1129 (a) (10) and 1129(b) of the
         Bankruptcy Code. ................................................................... 27
    H.    Controversy Concerning Impairment. ..................................... 27
    I.    Subordinated Claims................................................................ 27

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN........................... 28

    A.    Sources of Cash for Plan Distributions.................................... 28
    B.    Exit Facility............................................................................. 28
    C.    Litigation Proceeds Waterfall Provision ................................. 29
    D.    Litigation Trust. ...................................................................... 30
    E.    Books and Records Retention; Cooperation and Access to Books and
         Records .................................................................................... 36
    F.    No Revesting of Litigation Trust Assets.................................. 36
    G.    Issuance and Distribution of New GWO Interests................... 36
    H.    Restructuring Transactions. ..................................................... 37
    I.    Corporate Existence. ............................................................... 37
    J.    Merger or Dissolution of Co-Debtors, GWI, Holdings and Service.................. 37
    K.    Vesting of Assets in the Reorganized Debtor. ........................ 37

L.      Cancellation of Existing Indebtedness and Securities. ........................................ 38
M.      Corporate Action. ................................................................................................ 38
N.      New Certificate of Incorporation and New By-Laws. ......................................... 39
O.      Directors and Officers of the Reorganized Debtor. ............................................ 39
P.      Effectuating Documents; Further Transactions. .................................................. 40
Q.      Exemption from Certain Taxes and Fees. ............................................................ 40
R.      Indemnification Provisions. ................................................................................. 40
S.      Preservation of Causes of Action. ....................................................................... 41
T.      Intercompany Claims ........................................................................................... 41

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ................................................................................................................. 42

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases. ........ 42
B.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. ....... 43
C.      Insurance Policies. ............................................................................................... 44
D.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements. ......................................................................................................... 45
E.      Reservation of Rights. .......................................................................................... 45
F.      Nonoccurrence of Effective Date. ........................................................................ 45
G.      Contracts and Leases Entered Into After the Petition Date. ................................. 45

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 46

A.      Timing of Distributions. ....................................................................................... 46
B.      Disbursing Agent. ................................................................................................ 46
C.      Interest and Penalties on Claims .......................................................................... 47
D.      De Minimis Distributions ..................................................................................... 47
E.      Fractional Distributions ....................................................................................... 47
F.      No Distributions with Respect to Certain Claims ................................................ 47
G.      Rights and Powers of Disbursing Agent. ............................................................. 47
H.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .......... 48
I.      Manner of Payment. ............................................................................................. 48
J.      Section 1145 Exemption. ..................................................................................... 49
K.      Compliance with Tax Requirements. .................................................................... 49
L.      Forfeiture of Distributions ................................................................................... 50
M.      Allocations. .......................................................................................................... 50
N.      Setoffs and Recoupment. ...................................................................................... 50
O.      Claims Paid or Payable by Third Parties. ............................................................. 50

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
        AND DISPUTED CLAIMS ................................................................................... 51

A.      Prosecution of Objections to Claims .................................................................... 51
B.      Claims Administration Responsibilities. .............................................................. 51
C.      Estimation of Claims ............................................................................................ 52
D.      Adjustment to Claims Without Objection ............................................................. 52

E.      Disallowance of Claims. ................................................................... 52
F.      No Distributions to Holders of Disputed Claims. ............................... 53
G.      Distributions After Allowance. .......................................................... 53

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS ........................................................................................... 53

A.      Compromise and Settlement of Claims, Interests, and Controversies. ................ 53
B.      Discharge of Claims and Termination of Interests. ............................ 54
C.      Release of Liens. ................................................................................ 54
D.      Releases by the Debtors. .................................................................... 55
E.      Releases by Holders of Claims and Interests ..................................... 55
F.      Exculpation. ....................................................................................... 56
G.      Injunction. .......................................................................................... 56
H.      Liabilities to, and Rights of, Governmental Units. ............................ 58
I.      Term of Injunctions or Stays. ............................................................ 58

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........... 58

A.      Conditions Precedent to the Effective Date. ...................................... 58
B.      Waiver of Conditions. ........................................................................ 59
C.      Effect of Failure of Conditions. ......................................................... 59

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........ 59

A.      Modification and Amendments. .......................................................... 59
B.      Effect of Confirmation on Modifications. .......................................... 60
C.      Revocation or Withdrawal of Plan. .................................................... 60

ARTICLE XI. RETENTION OF JURISDICTION ................................................. 60

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................ 62

A.      Immediate Binding Effect. ................................................................. 62
B.      Additional Documents. ...................................................................... 63
C.      Statutory Committee and Cessation of Fee and Expense Payment. .... 63
D.      Reservation of Rights. ........................................................................ 63
E.      Successors and Assigns. ..................................................................... 63
F.      Notices. .............................................................................................. 63
G.      Entire Agreement. .............................................................................. 64
H.      Exhibits. ............................................................................................. 64
I.      Nonseverability of Plan Provisions ................................................... 64
J.      Votes Solicited in Good Faith. ........................................................... 65
K.      Closing of Chapter 11 Cases. ............................................................. 65
L.      Conflicts. ............................................................................................ 65

#44528003 v21

## INTRODUCTION

General Wireless Operations Inc. dba RadioShack ("<u>GWO</u>") and its Debtor affiliates, as debtors and debtors in possession, propose this plan of reorganization (the "<u>Plan</u>") for the resolution of the Claims against and Interests in each of the Debtors pursuant to chapter 11 of the Bankruptcy Code (as such terms are defined below). Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Holders of Claims and Interests should refer to the Disclosure Statement (as such terms are defined below) for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of this Plan.

ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN THEIR ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued but unpaid fees and expenses for services rendered through and including the Effective Date by any retained Professional in the Chapter 11 Cases that the Bankruptcy Court has not denied by Final Order.    To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the portion reduced or denied shall no longer constitute Accrued Professional Compensation.

2.    "*Administrative Claim*" means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), and 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (b) Allowed Accrued Professional Compensation Claims; (c) all fees and charges assessed against the Estates pursuant to sections 1991-1930 of chapter 123 of the Judicial Code; and (d) the DIP Facility Claims.

3.    "*Administrative Claims Bar Date*" means the First Administrative Claims Bar Date or the Second Administrative Claims Bar Date, as applicable.  For the avoidance of doubt, the bar date for Administrative Claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code was the General Claims Bar Date.

#44528003 v21

4.      "*Administrative Claims Objection Deadline*" means the date that is 45 days after the Administrative Claims Bar Date, unless extended by order of the Bankruptcy Court.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code and shall apply with equal force to non-Debtor entities.

6.      "*Agreement Among Lenders*" means the Amended and Restated Agreement Among Lenders, dated as of June 29, 2016, among Term Loan Lenders and the Revolving Lender (each as defined in the Second Lien Credit Agreement), as amended, supplemented, or modified from time to time.

7.      "*Allowed*"  means with respect to any Claim, except as otherwise provided herein: (i) a Claim that is evidenced by a Proof of Claim filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be filed); (ii) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely filed; or (iii) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or such an objection has been so interposed and the Claim shall have been Allowed by a Final Order. Unless otherwise set forth in the Plan, the term "Allowed Claim" shall not, for purposes of computing any distribution under this Plan, include interest, penalties or late charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable, or as otherwise set forth in a Final Order of the Bankruptcy Court.   Any portion of a Claim that is satisfied, released, withdrawn, or waived during the Chapter 11 Cases is not an Allowed Claim.

8.       "*Allowed Secured Lender Claims*" shall mean the Allowed First Out Second Lien Secured Claims and the Allowed Last Out Second Lien Secured Claims.

9.      "*Assumed Executory Contract and Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtor and in form and substance reasonably acceptable to the Supporting Lenders, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtor pursuant to the provisions of Article V.A and which shall be included in the Plan Supplement.

10.      "*Avoidance Actions*" means any and all rights to recover or avoid transfers under Bankruptcy Code sections 502(d), 544, 547, 548, 550, or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance

-2-

Actions; subject, however, to any releases thereof provided in the Plan, the Plan Supplement, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

11. "*Ballot*" means the form or forms distributed to certain Holders of Claims entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15. "*Bar Date Order*" means the order of the Bankruptcy Court dated May 23, 2017, docketed at Docket No. 651 in the Bankruptcy Cases, establishing deadlines for the filing of certain Claims in the Chapter 11 Cases.

16. "*Budget*" shall have the meaning ascribed to such term in the Final Cash Collateral Order and the DIP Order, as applicable.

17. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

18. "*Cash*" means the legal tender of the United States of America.

19. "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, right of setoff, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured, or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

-3-

#44528003 v21

21.     "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

22.     "*Claims Agent*" means Prime Clerk, retained as the Debtors' claims agent in the Chapter 11 Cases pursuant to order of the Bankruptcy Court.

23.     "*Claims Bar Date*" means, as applicable, the First Administrative Claims Bar Date, the Second Administrative Claims Bar Date, the Governmental Claims Bar Date, or the General Claims Bar Date.

24.     "*Claims Objection Deadline*" means, for all Claims (other than Fee Claims and Sprint Claims) the later of (a) 270 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order or a Final Order for objecting to such Claims, provided, however, that the Claims Objection Deadline may be extended from time to time by order of the Bankruptcy Court upon motion of the Reorganized Debtors or the Litigation Trustee.  The Claims Objection Deadline for Sprint Claims shall be the date that is 60 days after the entry of a Final Order in the Sprint Litigation.

25.     "*Claims Register*" means the official register of Claims maintained by the Claims Agent.

26.     "*Class*" means a class of Claims or Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

27.     "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

28.     "*Committee Fees and Expenses*" means the aggregate Allowed amount of the Committee's professionals' fees and expenses incurred from the Petition Date through the Effective Date, plus the aggregate Allowed amount of the Committee's professionals' fees and expenses incurred after the Effective Date solely with respect to their final fee applications.

29.     "*Committee Fees and Expenses Cap*" means with respect to the Committee Fees and Expenses payable from the Litigation Trust Reserve, Committee Fees and Expenses incurred prior to July 31, 2017 not to exceed $25,000 and Committee Fees and Expenses whenever incurred not to exceed $300,000.

30.     "*Committee Professional Fee Trust*" means the Kelley Drye & Warren LLP IOAL Account as referenced in the Interim Compensation Procedures Order.

31.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

32.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

#44528003 v21

33.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

34.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance reasonably acceptable to the Supporting Parties.

35.    "*Consummation*" means the occurrence of the Effective Date.

36.    "*Creditor Recoveries*" means the General Unsecured Recovery Pool, together with the Retained Creditor Action Proceeds, net of all Creditor Recoveries Expenses.

37.    "*Creditor Recoveries Expenses*" means any and all reasonable fees, costs and expenses incurred by the Litigation Trust or the Litigation Trustee (or any Disbursing Agent or any professional or other Entity retained by the Litigation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Litigation Trust Agreement, including but not limited to any administrative fees, the fees and expenses of the Litigation Trustee, attorneys' fees and expenses, other professional fees, insurance fees, taxes and escrow expenses, other than Litigation Expenses.  Creditor Recoveries Expenses shall also include any Committee Fees and Expenses in excess of the amounts authorized pursuant to Article II.A. of the Plan.

38.    "*Cure Amount*" means the payment of Cash or distribution of other property necessary to cure defaults under an executory contract or unexpired lease to permit the Reorganized Debtor to assume such contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code.

39.    "*Cure Claim*" means a Claim based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed, or assumed and assigned, by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default which is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

40.    "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to the proposed assumption, or assumption and assignment, of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith, and (c) procedures for the resolution by the Bankruptcy Court of any related disputes.

41.    "*Debtor*" means one of the Debtors, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

42.    "*Debtors*" means, collectively, the entities listed in footnote 1 hereof.

43.    "*Debtors' Professional Fee Trust*" means the Pepper Hamilton LLP Client Trust Account as referenced in the Interim Compensation Procedures Order.

44. "*DIP Facility*" means the debtor-in-possession credit facility provided under the DIP Facility Credit Agreement.

45. "*DIP Facility Agent*" means Cortland Capital Market Services LLC, as agent for the DIP Facility Lenders under the DIP Facility Credit Agreement.

46. "*DIP Facility Credit Agreement*" means that certain Debtor-in-Possession Credit Agreement among the Debtors, the DIP Facility Agent and the DIP Facility Lenders as approved by the DIP Order.

47. "*DIP Facility Claims*" means any Claim derived from, based upon, relating to, or arising under the DIP Facility Credit Agreement or the DIP Order, including any Claim on account of funded or unfunded amounts under the DIP Facility Credit Agreement.

48. "*DIP Facility Lenders*" means the lenders under the DIP Facility Credit Agreement.

49. "*DIP Order*" means the order entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Facility Credit Agreement and access the DIP Facility.

50. "*Disbursing Agent*" means (i) in the case of any distributions to holders of Allowed Class 2, Class 3, Class 5A, 5B or 5C Claims, the Litigation Trust, Litigation Trustee or an Entity engaged by the Litigation Trust, and (ii) in the case of all other distributions under the Plan, the Reorganized Debtor or the Entity or Entities selected by the Reorganized Debtor to make or facilitate distributions contemplated under the Plan.

51. "*Disclosure Statement*" means the Disclosure Statement for the Joint Plan of Reorganization of General Wireless Operations Inc. dba RadioShack and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

52. "*Disputed*" means, with respect to any Claim or Interest, a Claim or Interest that is not Allowed.

53. "*Distribution*" means any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

54. "*Distribution Record Date*" means the Effective Date.

55. "*Effective Date*" means the date selected by the Supporting Parties or as ordered by the Bankruptcy Court on motion of any such party, after all conditions precedent to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B hereof.

56. "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

-6-

57.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

58.     "*Exculpated Party*" means each of: (a) the Debtors and the Estates; (b) the Reorganized Debtor; (c) the Committee, (d) in any capacity, each of (i) the Second Lien Agent, (ii) the Second Lien Lenders, (iii) the DIP Facility Agent, (iv) the DIP Facility Lenders, (v) KKR, Standard General, and their respective affiliates; and (e) in their respective capacities as such, the Related Parties of each of the Entities in clauses (a) through (d).

59.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

60.     "*Exit Facility*" means a new credit facility in an amount not to exceed $2 million to be entered into on or after the Effective Date, having the terms and conditions set forth in the Exit Facility Credit Agreement.

61.     "*Exit Facility Credit Agreement*" means a new credit agreement governing the Exit Facility to be executed on the Effective Date by the Reorganized Debtor, the agent party thereto and the lenders party thereto, in substantially the form filed with the Plan Supplement.

62.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

63.     "*Fee Claim*" means a Claim for Accrued Professional Compensation.

64.     "*Fee Trusts*" means, collectively, the Debtors' Professional Fee Trust and the Committee Professional Fee Trust.

65.     "*File,*" "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

66.     "*Final Cash Collateral Order*" means the *Final Order (I) Authorizing Use Of Cash Collateral And Affording Adequate Protection; And (II) Modifying Automatic Stay* entered in the Chapter 11 Cases on April 11, 2017 at Docket Number 437.

67.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, however, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

-7-

68.    "*First Administrative Claims Bar Date*" means September 5, 2017 at 5:00 p.m. (ET), which was established by the Court as the deadline by which requests for payment of Administrative Claims (excluding section 503(b)(9) claims, which are governed by the General Claims Bar Date) arising during the period from the Petition Date through July 31, 2017 had to be Filed (subject to certain exceptions specified in the applicable order).

69.    "*First Out Second Lien Lenders*" means the Holders of the First Out Second Lien Secured Claims.

70.    "*First Out Second Lien Secured Claims*" means the "first out" term loans outstanding under the Junior Loan Agreement and the other First Out Loan Obligations (as defined in the Agreement Among Lenders), except any DIP Facility Claims, and all Claims granted under the Final Cash Collateral Order related thereto, against each of the Debtors, whether arising pre-Petition Date or post-Petition Date.

71.    "*General Claims Bar Date*" means July 18, 2017 at 5:00 p.m. (ET).

72.    "*General Unsecured Claim*" means any Claim that is not (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) a Subordinated Claim, (e) a Fee Claim, (f) an Intercompany Claim, (g) a First Out Second Lien Secured Claim, (h) a Last Out Second Lien Secured Claim, or (i) an Other Secured Claim.

73.    "*General Unsecured Recovery Pool*" means any Litigation Proceeds allocated and distributed to the Litigation Trust on behalf of Holders of General Unsecured Claims pursuant to the Litigation Proceeds Waterfall Provision.

74.    "*Governmental Claims Bar Date*" means September 5, 2017 at 5:00 p.m. (ET).

75.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

76.    "*GWH General Unsecured Claim*" means any General Unsecured Claim against Debtor General Wireless Holdings, Inc.

77.    "*GWI General Unsecured Claim*" means any General Unsecured Claim against Debtor General Wireless Inc.

78.    "*GWO/GWCS General Unsecured Claim*" means any General Unsecured Claim against Debtor GWO or Debtor General Wireless Customer Service Inc.

79.    "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

80.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81.    "*Initial Sprint Payment*" shall have the meaning given that term in the Amended Stipulation Regarding Senior Challenge, dated July 19, 2017 and filed with the Bankruptcy Court at Docket Number 820.

-8-

82.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

83.     "*Interests*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

84.     "*Interim Compensation Procedures Order*" means the order of the Bankruptcy Court entered on April 10, 2017 (Docket No. 425).

85.     "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended from time to time.

86.     "*Insurance Contracts*" means all insurance policies issued at any time to the Debtors, their affiliates or predecessors of any of the foregoing, and all agreements related thereto, but shall not include any workers' compensation insurance policies or related agreements that are not listed in the Plan Supplement or any contracts with United HealthCare Services, Inc. or UnitedHealthcare Insurance Company that are not listed in the Plan Supplement.

87.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

88.     "*KKR*" means Kohlberg Kravis Roberts & Co.

89.     "*Last Out Second Lien Lenders*" means the Holders of the Last Out Second Lien Secured Claims

90.     "*Last Out Second Lien Secured Claims*" means the "last out" revolving loans outstanding under the Junior Loan Agreement and the other Last Out Loan Obligations (as defined in the Agreement Among Lenders), except any DIP Facility Claims, and all Claims granted under the Final Cash Collateral Order related thereto, against each of the Debtors, whether arising pre-Petition Date or post-Petition Date.

91.     "*Lender Distributions*" means the Litigation Proceeds allocated and distributed to the Litigation Trust on behalf of Holders of Allowed Secured Lender Claims pursuant to the Litigation Proceeds Waterfall Provision.

92.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

93.     "*Litigation Expenses*" means any and all reasonable fees, costs and expenses incurred by the Litigation Trust or the Litigation Trustee, including any fees and expenses of Bartlit Beck Herman Palenchar & Scott LLP and Klehr Harrison Harvey Branzburg LLP, solely in connection with the Specified Causes of Action, including amounts funded for such purpose by the Debtors or the Supporting Lenders at any time, or the Reorganized Debtor following the Effective Date, in each case, including through the DIP Facility or Exit Facility, together with any interest paid or payable with respect thereto.

-9-

94.    "*Litigation Funding Amount*" means an amount in cash, to be agreed upon by the Supporting Parties on or before the Effective Date, or by the Supporting Lenders, the Litigation Trustee and the Litigation Trust Oversight Board after the Effective Date, to be provided by the Supporting Lenders to prosecute the Specified Causes of Action to the extent they are not resolved as of the Effective Date.

95.    "*Litigation Proceeds*" means any and all funds, including but not limited to cash, securities and other consideration, including any contingent or escrowed consideration, directly or indirectly recovered by the Debtors or on behalf of the Debtors' estates or by the Litigation Trust, in all cases, on account of or in connection with the Specified Causes of Action, to the extent such proceeds are recovered after July 31, 2017, net of Litigation Expenses, but shall not include (i) the Initial Sprint Payment, (ii) ordinary course payments or reimbursement made by Sprint Solutions, Inc. or its affiliates to the Debtors related to post-Petition Date business operations, or (iii) funds held in or disbursed from escrow pursuant to that certain Escrow Agreement dated March 8, 2017 among GWO, Sprint Solutions, Inc., and Wilmington Trust, National Association, as escrow agent.

96.    "*Litigation Proceeds Waterfall Provision*" means Article IV.C of the Plan.

97.    "*Litigation Trust*" means the trust established for the Litigation Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Litigation Trust Agreement.

98.    "*Litigation Trust Agreement*" means the trust agreement, to be dated as of or prior to the Effective Date, between the Debtors and the Litigation Trustee, governing the Litigation Trust, which shall be substantially in the form attached to the Plan Supplement and reasonably acceptable to the Supporting Lenders and the Committee.

99.    "*Litigation Trust Assets*" means (a) to the extent not resolved as of the Effective Date, the Specified Causes of Action, (b) to the extent the Specified Causes of Action are not resolved as of the Effective Date, the Litigation Funding Amount, (c) the Retained Creditor Actions, and (d) the Litigation Trust Funds.

100.    "*Litigation Trust Beneficiaries*" means with respect to those entitled to receive distributions under the Plan, the Holders of Allowed General Unsecured Claims, the Holders of Allowed First Out Second Lien Secured Claims and the Holders of Allowed Last Out Second Lien Secured Claims, and, upon payment in full of all of the foregoing Allowed Claims, Holders of Allowed Subordinated Claims and Allowed Interests.

101.    "*Litigation Trust Funds*" means the net amount of the Litigation Trust Reserve transferred to the Litigation Trust after satisfaction of the Committee Fees and Expenses, up to the Committee Fees and Expenses Cap.

102.    "*Litigation Trust Indemnified Parties*" means the Litigation Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such.

103.    *Litigation Trust Interests—Class A-1*" means the interest in the Litigation Trust that will allow the Holder thereof to share in distributions of the Litigation Proceeds, if any, in accordance with the Litigation Proceeds Waterfall Provision.

104.    "*Litigation Trust Interests—Class A-2*" means the interest in the Litigation Trust that will allow the Holder thereof to share in distributions of the Litigation Proceeds, if any, in accordance with the Litigation Proceeds Waterfall Provision.

105.    "*Litigation Trust Interests—Class B-1*" means the interest in the Litigation Trust that will allow the Holder thereof to share in the Creditor Recoveries, if any, after Holders of Litigations Trust Interests—Class B-2 and Holders of Litigation Trust Interests—Class B-3 are paid in full.

106.    "*Litigation Trust Interests—Class B-2*" means the interest in the Litigation Trust that will allow the Holder thereof to share in the Creditor Recoveries, if any, after Holders of Litigations Trust Interests—Class B-3 are paid in full.

107.    "*Litigation Trust Interests—Class B-3*" means the interest in the Litigation Trust that will allow the Holder thereof to share in the Creditor Recoveries, if any.

108.    "*Litigation Trust Oversight Board*" means the three (3) member board authorized and empowered to oversee, direct and approve the actions of the Litigation Trustee, solely with respect to the Specified Causes of Action, including with respect to the retention and compensation of counsel with respect thereto, in accordance with the terms of the Litigation Trust Agreement.  The initial members of the Litigation Trust Oversight Board shall be a representative appointed by each of KKR, Standard General, and the Committee.

109.    "*Litigation Trust Reserve*" means $500,000 in Cash.

110.    "*Litigation Trustee*" means the natural person appointed by the Committee and reasonably acceptable to the Supporting Lenders, to act as trustee of the Litigation Trust in accordance with the terms of the Plan, the Confirmation Order and the Litigation Trust Agreement, or any successor appointed in accordance with the Litigation Trust Agreement.

111.    "*Non-Compensatory Penalty Claims*" means any Claim, secured or unsecured, for any fine, penalty, forfeiture, or for multiple, exemplary, or punitive damages, to the extent such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

112.    "*New By-Laws*" means the by-laws of the Reorganized Debtor, substantially in the form contained in the Plan Supplement.

113.    "*New Certificate of Incorporation*" means the certificate of incorporation of the Reorganized Debtor, substantially in the form contained in the Plan Supplement.

114.    "*New Corporate Governance Documents*" means, as applicable, (a) the New Certificate of Incorporation, or (b) the New By-Laws.

-11-

115.    "*New GWO Interests*" means common shares of Reorganized Debtor authorized pursuant to the Plan, and initially issued and outstanding as of the Effective Date.

116.    "*New Principal Amount*" has the meaning ascribed to such term in Article III.C.2 of the Plan.

117.    "*New Second Lien Secured Notes*" means the promissory notes to be executed in connection with the New Second Lien Credit Agreement on the Effective Date by the Reorganized Debtor in favor of the First Out Second Lien Lenders reflecting the treatment afforded Allowed Class 2 Claims, in substantially the form filed with the Plan Supplement.

118.    "*New Second Lien Credit Agreement*" means a new credit agreement to be executed on the Effective Date by the Reorganized Debtor, the Second Lien Agent and the First Out Second Lien Lenders reflecting the treatment afforded Allowed Class 2 Claims, in substantially the form filed with the Plan Supplement.

119.    "*Notice and Solicitation Agent*" means Prime Clerk, retained as the Debtors' notice and solicitation agent.

120.    "*Other Secured Claim*" means any Secured Claim secured by a Permitted Lien that is not a First Out Second Lien Secured Claim or a Last Out Second Lien Secured Claim.

121.    "*Permitted Liens*" means all Junior Permitted Liens as defined in the Final Cash Collateral Order.

122.    "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

123.    "*Petition Date*" means the date on which each of the Debtors commenced the Chapter 11 Cases.

124.    "*Plan*" means this Joint Plan of Reorganization of General Wireless Operations Inc. dba RadioShack and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, including the Plan Supplement (as modified, amended, or supplemented from time to time), which is incorporated herein by reference.

125.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, each in form and substance reasonably acceptable to the Debtors, the Supporting Lenders, the Second Lien Agent and the Committee, to be Filed by the Debtors no later than fourteen days before the Confirmation Hearing, and as may be amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including the following:  (a) the New Corporate Governance Documents; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List; (d) the New Second Lien Credit Agreement; (e) the New Second Lien Secured Notes; (f) an allocation of the Lender Distributions among the Entities entitled to such distributions; (g) the Exit Facility Credit Agreement; (h) the Litigation Trust Agreement; (i) a list of the members of the board of directors of the Reorganized Debtor; (j) a list of the officers of the Reorganized Debtor; (k) a list of

Retained Causes of Action; and (l) a list of Retained Creditor Actions.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (m). The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with Article X.A hereof, and the Reorganized Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with applicable law; provided, that such amendments are reasonably acceptable to the Supporting Lenders and the Second Lien Agent.

126.    "*Plan Support Agreement*" means the Plan Support Agreement, dated as of August 17, 2017, by and among the Debtors, the Committee, certain of the Second Lien Lenders and the Second Lien Agent.

127.    "*Priority Claims"* means Priority Tax Claims and Priority Non-Tax Claims.

128.    "*Priority Non-Tax Claims*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

129.    "*Priority Tax Claim*" means an Unsecured Claim of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

130.    "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

131.    "*Proof of Claim* " means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

132.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

133.    "*Reinstated*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

134.    "*Rejected Executory Contract and Unexpired Lease List*" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtor and in form and substance reasonably acceptable to the Supporting Lenders, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Debtors pursuant to the provisions of Article V. A hereof and which shall be included in the Plan Supplement.

135.    "*Related Parties*" means collectively, (i) with respect to the Debtors, each of their respective advisors, directors (but only those directors either serving on or after the Petition Date or who are affiliates or designees of KKR or Standard General), employees, officers (but only those officers serving on or after the Petition Date), advisory board members, shareholders

and professional persons, in each case solely in their capacity as such; (ii) with respect to the Committee, its advisors, members and professional persons, in each case solely in their capacity as such; and (iii) with respect to the Second Lien Agent, the Second Lien Lenders, the DIP Facility Agent and the DIP Facility Lenders, their respective Affiliates, advisors, members, managers, directors, partners, principals, shareholders, advisory board members, employees, agents, officers, representatives and professional persons, in each case solely in their capacity as such.

136.    "*Released Claims*" means (i) any and all claims and Causes of Action of any nature whatsoever relating to any Debtor arising at any time prior to the Effective Date, including without limitation (a) all claims and Causes of Action based on, arising out of, or related to the issuance of any equity interest or debt instrument of any Debtor, (b) all claims and Causes of Action based on, arising out of, or related to the Debtors' governance, management decisions, financial condition or financial reporting; (c) all Causes of Action under chapter 5 of the Bankruptcy Code; and (ii) any and all claims and Causes of Action arising from actions taken or not taken in connection with the Restructuring and the Chapter 11 Cases; provided, however, that Released Claims shall not include (i) any Retained Causes of Action against any Released Party (other than the Second Lien Agent, the Second Lien Lenders, the DIP Facility Agent, the DIP Facility Lenders or the Related Parties of such Entities) to the extent such claim may be asserted as an affirmative defense or to establish any right of setoff or recoupment, or (ii) the Specified Causes of Action, the Retained Creditor Actions, and the Retained Causes of Action.

137.    "*Released Party*" means each of: (a) the Debtors and the Estates; (b) the Committee and its members; (c) in any capacity, each of (i) the Second Lien Agent; (ii) the Second Lien Lenders; (iii) KKR, Standard General and their respective affiliates; (iv) the DIP Facility Agent; and (v) the DIP Facility Lenders; (d) in their respective capacities as such, the directors and officers of the Debtors that held such positions (i) prior to the Petition Date that were designees of, or appointed by, KKR or Standard General, or (ii) on or after the Petition Date, and (e) in their respective capacities as such, the Related Parties of each of the Entities in clauses (a), (b) and (c).

138.    "*Remaining Avoidance Claims*" means all of the Debtors' Avoidance Actions that are not Specified Causes of Action or Retained Creditor Actions.

139.    "*Reorganized Debtor*" means GWO, as reorganized pursuant to this Plan.

140.    "*Restructuring Transactions*" means the restructuring of the Debtors' assets and liabilities on the terms and conditions set forth in this Plan.

141.    "*Retained Causes of Action*" means all Claims and Causes of Action of the Debtors of the Estates against third-parties that are not expressly waived or released under the Plan or any Order of the Bankruptcy Court, including without limitation those Claims and Causes of Action identified as Retained Causes of Action in the Plan Supplement.  For the avoidance of doubt, Retained Causes of Action shall not include Remaining Avoidance Claims.

142.    "*Retained Creditor Actions*" means (a) subject to the releases and exculpation set forth in the Plan, any and all claims and causes of action that may be asserted by or on behalf of

the Debtors' estates against any of the Debtors' former officers and directors who both (i) no longer held such positions as of March 8, 2017 and (ii) were not directors designated by any of the Second Lien Lenders or their affiliates; and (b) any and all claims and causes of action that have been, or may be in the future be, asserted by or on behalf of the Debtors' estates against Branding Brand, Inc. and any of its affiliates, arising out of or related in any way to that certain Master Subscription Agreement, dated as of August 20, 2015, and any related agreements or amendments thereto.

143.    "*Retained Creditor Action Proceeds*" means any means any and all funds, including but not limited to cash, securities and other consideration, including any contingent or escrowed consideration, directly or indirectly recovered, in each case, by the Debtors or on behalf of the Debtors' estates or by the Litigation Trust on account of or in connection with the Retained Creditor Actions.

144.    "*SEC*" means the United States Securities and Exchange Commission.

145.    "*Second Administrative Claims Bar Date*" means the date that is 45 days after the Effective Date, or such earlier date set by order of the Bankruptcy Court, by which requests for payment of Administrative Claims that first arose after July 31, 2017, or in the case of unexpired leases of real or personal property, accrued after July 31, 2017, must be Filed.

146.    "*Second Lien Agent*" means Cortland Capital Market Services LLC, as agent for the Second Lien Lenders under the Second Lien Credit Agreement.

147.    "*Second Lien Credit Agreement*" means the Second Amended and Restated Second Lien Credit Agreement, dated as of June 29, 2016, among General Wireless Holdings Inc., GWO, the lenders from time to time party thereto, and the Second Lien Agent, as amended, supplemented, or modified from time to time.

148.    "*Second Lien Deficiency Claims*" means any portion of the First Out Second Lien Claims and the Last Out Second Lien Claims that is not Secured.

149.    "*Second Lien Lenders*" means, collectively, the First Out Second Lien Lenders and the Last Out Second Lien Lenders.

150.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan or any Final Order as a secured Claim.

151.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. 77a-77aa, as amended from time to time, together with the rules and regulations promulgated thereunder.

152.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

153.    "*SG Contribution*" means a portion of the Allowed Last Out Second Lien Claims in the amount of $5,000,000 to be satisfied in exchange for 100% of the New GWO Interests as set forth in Article III.C.3 of this Plan.

154.    "*Specified Causes of Action*" means any and all Claims and Causes of Action that have been or may in the future be asserted by or on behalf of any of the Debtors or the Debtors' estates against Sprint Solutions, Inc. or Carphone Warehouse (or their respective affiliates), whether pursuant to the Sprint Litigation, or otherwise.  Specified Causes of Action shall not include claims for (i) ordinary course payments or reimbursement made or payable by Sprint Solutions, Inc or its affiliates to the Debtors related to post-Petition Date business operations, or (ii) the right to funds held in or disbursed from escrow pursuant to that certain Escrow Agreement dated March 8, 2017 among GWO, Sprint Solutions, Inc., and Wilmington Trust, National Association as escrow agent, all of which are Retained Causes of Action.

155.    "*Sprint Claims*" means the Claims of Sprint Corporation, Sprint Communications, Inc., Sprint Solutions, Inc., Sprint Spectrum L.P., SprintCom, Inc., Sprint PCS Assets, L.L.C., APC Realty and Equipment Company, LLC, and Sprint eWireless, Inc., together with their affiliates, parents, subsidiaries, against any of the Debtors or the Estates.

156.    "*Sprint Litigation*" means the claims and causes of action now or hereafter asserted by the Plaintiffs against Sprint Solutions, Inc. in that certain Complaint filed by the Committee and the Second Lien Agent against Sprint Solutions, Inc. in the Superior Court for the State of Delaware on June 28, 2017, Case No. N17C-06-356 PRW CCLD, as the same may be amended from time to time and in whatever forum such litigation may proceed.

157.    "*Standard General*" means Standard General L.P.

158.    "*Subordinated Claims*" means (i) any Non-Compensatory Penalty Claim, and (ii) any Claim that is subordinated to General Unsecured Claims pursuant to section 510 of the Bankruptcy Code, by a Final Order of the Bankruptcy Court or pursuant to any other applicable law.

159.    "*Supporting Lenders*" means the Second Lien Lenders party to the Plan Support Agreement.

160.    "*Supporting Parties*" means the Debtors, the Committee, the Second Lien Agent, and the Supporting Lenders.

161.    "*Tax*" means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

#44528003 v21

162. "*Treasury Regulations*" means regulations (including temporary and proposed) promulgated under the Internal Revenue Code.

163. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

164. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

165. "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

B.      *Rules of Interpretation.*

For purposes of this Plan, unless otherwise expressly provided herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (12) any immaterial effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order; and (13) any undefined term used herein that is defined in the Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of

Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtor, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Reorganized Debtor.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtor shall mean the Debtors and the Reorganized Debtor, as applicable, to the extent the context requires.

# ARTICLE II.
# ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

1.      Administrative Claims.

Except as provided below with respect to Administrative Claims that are Fee Claims or DIP Facility Claims, and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor(s) or Reorganized Debtor agrees to less favorable treatment with respect to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions and shall not be required to file a request for payment of an Administrative Claim.

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims that first arose, or in the case of unexpired leases of real or personal property, accrued, after July 31, 2017, must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order

no later than the Second Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtor and the requesting party no later than the Administrative Claims Objection Deadline.

2.    DIP Facility Claims.

On the Effective Date, the DIP Facilities Claims shall be deemed to be Allowed and, unless paid in the ordinary course of business or out of Litigation Proceeds, in each case, prior to the Effective Date, indefeasibly satisfied by an in-kind exchange on a dollar-for-dollar basis for obligations of the Reorganized Debtor under the Exit Facility; provided, however, that any interest, fees and expenses set forth in Article IX.A.8 hereof shall be deemed Allowed and paid in Cash on the Effective Date.

3.    Professional Compensation.

(a)    Fee Claims.

Professionals asserting a Fee Claim for services rendered but not previously Allowed on a final basis must File and serve on the Debtors and such other Entities specified in the Interim Compensation Procedures Order, an application for final allowance of such Fee Claim no later than 45 days after the Effective Date.  Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party no later than 60 days after the Effective Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

(b)    The Fee Trusts.

On the Effective Date, the Fee Trusts established pursuant to the Interim Compensation Order shall remain funded with Cash deposited therein pursuant to the Final Cash Collateral Order.  To the extent not earlier paid pursuant to the Interim Compensation Order, but subject to the next paragraph herein, upon final Allowance, the amount of Allowed Accrued Professional Compensation Claims owing to the applicable Professionals shall be paid in Cash to such Professionals from funds held in the respective Fee Trusts and any unapplied retainer when such Claims are Allowed by a Final Order.  Allowed Accrued Professional Compensation Claims shall be paid first from any unapplied retainer that has been provided to such Professional, second from amounts in the applicable Fee Trust for such Professional, and then, subject to the next paragraph, by the Reorganized Debtor promptly upon Allowance.  When all Allowed Accrued Professional Compensation Claims are paid in full in Cash, amounts remaining in the Fee Trusts, if any, shall revert to the Reorganized Debtor.

The Committee Fees and Expenses incurred prior to and through July 31, 2017, excluding any Allowed fees and expenses of Bartlit Beck Herman Palenchar & Scott LLP and Klehr Harrison Harvey Branzburg LLP incurred in connection with the Specified Causes of Action, shall be subject to a cap of $1,425,000, with $100,000 of such amount payable on the

Effective Date and $25,000 of such amount payable from the Litigation Trust Reserve. The Committee Fees and Expenses incurred after July 31, 2017 shall be payable from the Litigation Trust Reserve subject to the Committee Fees and Expenses Cap. Notwithstanding anything herein to the contrary, to the extent Committee Fees and Expenses exceed the foregoing amounts, such excess shall be paid from Creditor Recoveries prior to any Distributions being made to Holders of Allowed Class 5A, 5B and 5C Claims.

(c)     Post-Effective Date Fees and Expenses.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor and the Litigation Trustee may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court, subject to, in the case of the Litigation Trustee only, the terms and conditions of the Litigation Trust Agreement.

B.     *Priority Tax Claims.*

On, or as soon as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim against a Debtor, each holder of an Allowed Priority Tax Claim will receive, in full and final satisfaction and discharge thereof, (a) payment in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (b) payment as agreed between the holder of the Allowed Priority Tax Claim and the Reorganized Debtor.

Notwithstanding anything to the contrary in this Section II.B, any Non-Compensatory Penalty Claim arising with respect to or in connection with an Allowed Priority Tax Claim shall be granted the treatment as set forth in Article III.

C.     *Statutory Fees.*

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. The Reorganized Debtor shall pay all U.S. Trustee fees due and owing under 28 U.S.C. § 1930 until such time as the Reorganized Debtor moves for entry of a final decree and the Bankruptcy Court enters such a decree.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the

Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims; provided, however, that, if no holder of a Claim or Interest with respect to a specific Class for a particular Debtor timely submits a Ballot in compliance with the Solicitation Procedures indicating acceptance or rejection of this Plan, such Class will be deemed to have accepted this Plan pursuant to the Confirmation Order. The Debtors may seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

B.      *Summary of Classification.*

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.E hereof.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | First Out Second Lien Secured Claims | Impaired | Entitled to Vote |
| 3 | Last Out Second Lien Secured Claims | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5A | GWI General Unsecured Claims | Impaired | Deemed to Reject |
| 5B | GWH General Unsecured Claim | Impaired | Deemed to Reject |
| 5C | GWO/GWCS General Unsecured Claims | Impaired | Deemed to Reject |
| 6 | Subordinated Claims | Impaired | Deemed to Reject |
| 7 | Interests | Impaired | Deemed to Reject |

C.      *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.      Class 1 – Priority Non-Tax Claims.

        (a)      *Classification:* Class 1 consists of Priority Non-Tax Claims.

-21-

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Non-Tax Claim, each Holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash by the Reorganized Debtor as soon as reasonably practicable on or after the latest of (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim, (iii) such other date as may be ordered by the Bankruptcy Court, or (iv) when due and payable in the ordinary course of business.

(c)     *Voting:* Class 1 is Unimpaired by the Plan, and each Holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, Holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – First Out Second Lien Secured Claims.

(a)     *Classification:* Class 2 consists of First Out Second Lien Secured Claims.

(b)     *Allowance:* The First Out Second Lien Secured Claims shall be Allowed in the aggregate principal amount of $23,244,644.13, plus any and all accrued and unpaid contractual interest as of the Effective Date and reasonable professional fees and expenses of the Second Lien Agent and the First Out Second Lien Lenders accrued and unpaid as of the Effective Date, less any cash distributions made under the Final Cash Collateral Order on account of the principal amount of such Claims after July 31, 2017.

(c)     *Treatment:* Except to the extent that a Holder of an Allowed First Out Second Lien Secured Claim agrees to a less favorable treatment, on the Effective Date, the First Out Second Lien Lenders shall receive, in full and final satisfaction, settlement, release, and discharge of their Allowed First Out Second Lien Secured Claims, their allocable share of the New Second Lien Secured Notes, on the following key terms:

(i)     Aggregate Principal Amount (the "New Principal Amount"): $23,244,644.13, plus accrued but unpaid interest, payable as follows:

(ii)    Interest:  LIBOR plus 1000 basis points, paid quarterly in Cash.

(iii)   Collateral:  The New Second Lien Secured Notes shall be secured by all of the Reorganized Debtor's assets, subject only to any valid and perfected Permitted Liens that had priority over the First Out Second Lien Secured Claims as

of the Petition Date under applicable law, and Liens securing the Exit Facility.

(iv)    Paydown with Litigation Proceeds:

Each Holder of an Allowed First Out Second Lien Secured Claim shall receive its allocable share of Litigation Trust Interests – Class A-1, which will provide for such Holders to receive its allocable share of all Lender Distributions as provided in the Litigation Proceeds Waterfall Provision (as evidenced by Litigation Trust Interests Class A-1), which amounts shall be applied dollar-for-dollar to the Debtors' outstanding principal obligations under the New Second Lien Secured Notes, until the New Second Lien Secured Notes are paid in full after giving effect to any principal payments made by the Reorganized Debtor on account of the New Second Lien Notes.  For the avoidance of doubt, the Holders of Class 2 First Out Second Lien Secured Claims shall not be entitled to receive any Retained Creditor Action Proceeds.

(v)    Professional Fees and Expenses: the reasonable professional fees and expenses of the Second Lien Agent and the First Out Second Lien Lenders shall be paid in cash on the Effective Date.

(d)    *Voting:* Class 2 is Impaired by the Plan.  Therefore, Holders of Class 2 First Out Second Lien Secured Claims are entitled to vote to accept or reject the Plan.

3.    Class 3 – Last Out Second Lien Secured Claims.

(a)    *Classification:* Class 3 consists of the Last Out Second Lien Secured Claims.

(b)    *Allowance:* The Last Out Second Lien Secured Claims shall be Allowed in the aggregate principal amount of $57,861,555.02, plus any and all accrued and unpaid contractual interest as of the Effective Date and reasonable professional fees and expenses of the Last Out Second Lien Lender accrued and unpaid as of the Effective Date, less any cash distributions made under the Final Cash Collateral Order or on account of the principal amount of such Claims after July 31, 2017.

(c)    *Treatment:* Except to the extent that a Holder of the Last Out Second Lien Secured Claim agrees to a less favorable treatment, each Last Out Second Lien Secured Claim shall receive (i) on the Effective Date, in full and final satisfaction, settlement, release, and discharge of its Pro Rata Share of $5 million of Allowed Last Out Second Lien Secured Claims, its Pro Rata

share of 100% of the New GWO Interests, and (ii) in full and final satisfaction, settlement, release, and discharge of the balance of its Allowed Last Out Second Lien Secured Claim, and until all Allowed Last Out Second Lien Secured Claims have been paid in full (other than Claims described in clause (i)), its allocable share of Litigation Trust Interests – Class A-2, which will provide for such Holder to receive its allocable share of all Lender Distributions as provided in the Litigation Proceeds Waterfall Provision (as evidenced by Litigation Trust Interests Class A-2) remaining after payment in full of all Allowed First Out Second Lien Secured Claims.  For the avoidance of doubt, the Holder of the Class 3 Last Out Second Lien Secured Claim shall not be entitled to receive any Retained Creditor Action Proceeds.

(d)    *Voting:* Class 3 is Impaired by the Plan.  Therefore, the Holder of the Class 3 Last Out Second Lien Secured Claim is entitled to vote to accept or reject the Plan.

4.    Class 4 – Other Secured Claims.

(a)    *Classification:* Class 4 consists of all Other Secured Claims.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment or such Allowed Other Secured Claim is Reinstated, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim, including Secured Tax Claims, shall receive, on the later of the Effective Date and the date on which the Other Secured Claim becomes an Allowed Claim, at the option of the Reorganized Debtor made in consultation with the Supporting Lenders:  (a) Cash equal to the amount of such Allowed Other Secured Claim; (b) the collateral securing such Allowed Other Secured Claim; or (c) satisfaction of such Allowed Other Secured Claim pursuant to such other terms and conditions as may be agreed upon by the Reorganized Debtor and the Holder of such Allowed Other Secured Claim.

(c)    *Voting:* Class 4 is Unimpaired by the Plan, and each Holder of a Class 4 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 4 Other Secured Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5A – GWI General Unsecured Claims.

(a)    *Classification*:  Class 5A consists of all GWI General Unsecured Claims.  Class 5A shall not include any Second Lien Deficiency Claims.

(b)    *Treatment*:  In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed GWI General Unsecured Claim, each

#44528003 v21

Holder of an Allowed GWI General Unsecured Claim shall receive, until all Allowed GWI General Unsecured Claims have been paid in full, its Pro Rata share of (i) the Litigation Trust Interests—Class B-1, or (ii) such other less favorable treatment as to which such Holder and the Debtors or the Litigation Trustee shall have agreed upon in writing.

(c)     *Voting*: Class 5A is Impaired, and will be deemed to have rejected the Plan.  Therefore, Holders of Class 5A GWI General Unsecured Claims are not entitled to vote to accept or reject the Plan.

6.     Class 5B – GWH General Unsecured Claims.

(a)     *Classification*:  Class 5B consists of all GWH General Unsecured Claims. Class 5B shall not include any Second Lien Deficiency Claims.

(b)     *Treatment*:  In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed GWH General Unsecured Claim, each Holder of an Allowed GWH General Unsecured Claim shall receive, until all Allowed GWH General Unsecured Claims have been paid in full, its Pro Rata share of (i) the Litigation Trust Interests—Class B-2, or (ii) such other less favorable treatment as to which such Holder and the Debtors or the Litigation Trustee shall have agreed upon in writing.

(c)     *Voting*: Class 5B is Impaired, and will be deemed to have rejected the Plan.  Therefore, Holders of Class 5B GWH General Unsecured Claims are not entitled to vote to accept or reject the Plan.

7.     Class 5C – GWO/GWCS General Unsecured Claims.

(a)     *Classification:* Class 5C consists of all GWO/GWCS General Unsecured Claims.  Class 5C shall not include any Second Lien Deficiency Claim.

(b)     *Treatment:* In exchange for full and final satisfaction, settlement, release, and discharge of each Allowed GWO/GWCS General Unsecured Claim, each Holder of an Allowed GWO/GWCS General Unsecured Claim shall receive, until all Allowed GWO/GWCS General Unsecured Claims have been paid in full, its Pro Rata share of (i) the Litigation Trust Interests—Class B-3, or (ii) such other less favorable treatment as to which such Holder and the Debtors or the Litigation Trustee shall have agreed upon in writing.

(c)     *Voting:* Class 5C is Impaired, and will be deemed to have voted to reject the Plan.   Therefore, Holders of Class 5C GWO/GWCS General Unsecured Claims are not entitled to vote on the Plan.

8.     Class 6 – Subordinated Claims.

(a)     *Classification:* Class 6 consists of all Subordinated Claims.

#44528003 v21

(b)    *Treatment:*  Except only as provided in Section IV.C.5 of the Plan, Holders of Subordinated Claims shall not be entitled to receive, and shall not receive or retain, any property under the Plan on account of such Subordinated Claims.

(c)    *Voting:* Class 6 is Impaired and Holders of Class 6 Subordinated Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Subordinated Claims are not entitled to vote such Claims to accept or reject the Plan.

9.    Class 7 – Equity Interests.

(a)    *Classification:* Class 7 consists of Interests.

(b)    *Treatment:*  Except only as provided in Section IV.C.5 of the Plan, Holders of Interests shall not receive any distribution on account of such Interests.  On the Effective Date, Class 7 Interests shall be cancelled and discharged.

(c)    *Voting:* Class 7 is Impaired and Holders of Class 7 Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Interests are not entitled to vote such Interests to accept or reject the Plan.

D.    *Special Provision Governing Claims.*

Except as otherwise provided in the Plan or a Final Order of the Bankruptcy Court, nothing under the Plan shall affect the Debtors', the Reorganized Debtor's, or the Litigation Trustee's rights in respect of any Claims, including legal and equitable defenses to or setoffs or recoupments against any such Claims.

E.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Acceptance or Rejection of the Plan.*

1.    Voting Classes.

Classes 2 and 3 are Impaired under the Plan and the Holders of Claims in such Class are entitled to vote to accept or reject the Plan.

2.    Failure to Vote.

-26-

If Holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject the Plan, but no Holders of Claims in such Impaired Class of Claims voted to accept or reject the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

3.      Presumed Acceptance of the Plan.

Classes 1 and 4 are Unimpaired under the Plan, and the Holders of Claims in such Classes are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan on account of such Claims.

4.      Presumed Rejection of Plan.

Classes 5A, 5B and 5C will be deemed to have rejected the Plan, and accordingly the Holders of Claims in such Class are not entitled to vote on the Plan on account of such Claims.

Classes 6 and 7 are Impaired and shall receive no distribution under the Plan except only as provided in Section IV.C.5 of the Plan.  The Holders of Claims and Interests in such Classes, as applicable, are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Claims and Interests.

G.      *Confirmation Pursuant to Sections 1129 (a) (10) and 1129(b) of the Bankruptcy Code.*

The Debtors expect that section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to Classes 5A, 5B, 5C, 6 and 7, and any other rejecting Class of Claims or Interests.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims.*

Except as otherwise provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor or the Litigation Trustee, as applicable, reserve the right to re-classify any Interest or Allowed Claim, other than the Allowed First Out Second Lien Secured Claims or the Allowed Last Out Second Lien Secured Claims, in accordance with any contractual, legal, or equitable subordination relating thereto.

-27-

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sources of Cash for Plan Distributions.*

All consideration necessary for the Reorganized Debtor or the Litigation Trustee, as applicable, to make payments or distributions pursuant hereto shall be obtained from (i) Cash held by the Debtors as of the Effective Date, on which the Second Lien Lenders have agreed to release their Claims and Liens to the extent necessary to pay Allowed Administrative Claims and Allowed Priority Claims as provided herein, (ii) the DIP Facility and the Exit Facility (neither of which shall be available to the Litigation Trustee), (iii) the Litigation Trust Reserve and Litigation Trust Funding Amount, and (iv) other Cash of the Reorganized Debtors (which shall not be available to the Litigation Trustee), including Cash from continuing business operations.

B.      *Exit Facility.*

On the Effective Date, the Reorganized Debtor is authorized to execute and deliver those documents necessary or appropriate to satisfy the conditions to effectiveness of the Exit Facility, including the Exit Facility Credit Agreement.  The Exit Facility, and the Reorganized Debtor's Cash on hand will provide sufficient available funds as of the Effective Date to: (i) make all required Effective Date payments under the Plan; and (ii) provide the Reorganized Debtor with working capital necessary to run its business.

On the Effective Date, the Reorganized Debtor's obligations under the Exit Facility Credit Agreement shall constitute legal, valid, binding, and authorized obligations, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Facility Credit Agreement are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Credit Agreement (1) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Credit Agreement, and (2) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtor and the entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

-28-

C. *Litigation Proceeds Waterfall Provision*

           The Litigation Proceeds shall be allocated and paid according to the following priority:

1. Satisfaction of any unpaid Allowed Administrative Claims and Allowed Priority Claims payable pursuant to the Plan.

2. Reimbursement of the Supporting Lenders for any amounts advanced by them under the DIP Facility or the Exit Facility, together with any interest paid or payable with respect thereto, to (a) pay Allowed Administrative Claims or Allowed Priority Claims under the Plan or in the ordinary course, (b) provide the Debtors with liquidity prior to the Effective Date under the DIP Facility, (c) provide funding to effectuate the Plan, including for Fee Claims, (d) provide funding for the litigation of the Specified Causes of Action, including the Litigation Funding Amount, or (e) fund the Litigation Trust Reserve pursuant to the Plan.

3. Upon satisfaction and payment of all amounts described in subparagraphs 1 and 2 above, any Litigation Proceeds up to $5,000,000 shall be allocated (a) 80% for the benefit of the Holders of Allowed First Out Second Lien Claims, and (b) 20% to the Litigation Trust for the benefit of Holders of Allowed General Unsecured Claims.

4. Any Litigation Proceeds recovered in excess of the amounts needed to satisfy the obligations set forth in subparagraphs 1, 2 and 3 above shall be allocated (a) 90% for the benefit of Holders of Allowed First Out Second Lien Secured Claims and Holders of Allowed Last Out Second Lien Secured Claims (excluding the SG Contribution) until paid in full in Cash (without post-Effective Date interest), with Allowed First Out Second Lien Claims being paid in full in Cash prior to payment on the Allowed Last Out Second Lien Claims (excluding the SG Contribution), and (b) 10% to the Litigation Trust for the benefit of holders of Allowed General Unsecured Claims until paid in full; provided, however, that if at the time of any Lender Distribution, any interest is due and owing under the New Second Lien Secured Notes (the "Unpaid Interest"), then such Unpaid Interest (but capped using the default rate provided in the Junior Loan Agreement (as defined in the Agreement Among Lenders)), shall be paid to the holders of the New Second Lien Secured Notes first out of any Lender Distributions that otherwise would be payable to the Last Out Second Lien Lenders, and upon such payment the Last Out Second Lien Lenders shall be subrogated to the rights of such holders of New Second Lien Secured Notes against the Reorganized Debtor with regard to such Unpaid Interest paid to the holders of the New Second Lien Secured Notes.

#44528003 v21

5. Any Litigation Proceeds recovered in excess of the amounts needed to satisfy the obligations set forth in subparagraphs 1, 2, 3 and 4 above shall be distributed first to reimburse the Reorganized Debtor for any payments made by it under the New Second Lien Credit Agreement, then Pro Rata to the Holders of Subordinated Claims until paid in full, and then Pro Rata to Holders of Interests in General Wireless Inc.

Litigation Proceeds received by the Supporting Lenders under subparagraph 2 above shall be applied to reduce the Reorganized Debtors' obligations under the Exit Facility, as applicable and, under subparagraphs 3 and 4, as applicable, the New Second Lien Secured Notes.

For purposes of the waterfall of Litigation Proceeds, but subject to the provisions in paragraph 4 above, (i) post-Effective Date interest on Allowed First Out Second Lien Secured Claims and Allowed Last Out Second Lien Secured Claims shall not be included when determining whether such Claims have been paid in full; and (ii) post-Effective Date interest on DIP Facility Claims and Exit Facility Claims shall be included when determining whether such Claims have been paid in full.

D.    *Litigation Trust.*

1.    Formation of the Litigation Trust.

On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of prosecuting Specified Causes of Action and the Retained Creditor Actions and making distributions (if any), including to Second Lien Lenders and Holders of Allowed General Unsecured Claims, in accordance with the terms of the Plan. For the avoidance of doubt, Distributions of Litigation Proceeds pursuant to Section IV.C. hereof to Holders of Allowed Subordinated Claims, or Allowed Interests shall be made by the Reorganized Debtor. The Litigation Trust shall have a separate existence from the Reorganized Debtor. The Litigation Trust prosecution of any of the Specified Causes of Action will be on behalf of and for the benefit of the Litigation Trust Beneficiaries.

a.    On the Effective Date, the Debtors and the Litigation Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Plan. Also on the Effective Date, the Debtors and the Committee (as applicable) shall be deemed to have irrevocably transferred to the Litigation Trust all rights, title, and interest in and to all of the Litigation Trust Assets, and in accordance with Bankruptcy Code section 1141, the Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests, as provided for in the Litigation Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, or other transfer, mortgage reporting, sales, use, or other similar tax. For the avoidance of doubt, on the Effective Date, standing to commence, prosecute and compromise all Specified Causes of Action and Retained Creditor Actions shall transfer to the Litigation Trustee and/or the Litigation Trust; provided however, that no Retained Causes of Action shall be transferred or issued to the Litigation Trust.

#44528003 v21

b.       Subject to, and to the extent set forth in, the Plan, the Confirmation Order, and the Litigation Trust Agreement (or any other order of the Bankruptcy Court entered pursuant to, or in furtherance of the Plan), the Litigation Trust and the Litigation Trustee, together with its agents, representatives and professionals, will be empowered to take the following actions, and any other actions, as the Litigation Trustee determines to be necessary or appropriate to implement the Litigation Trust, all without further order of the Bankruptcy Court:

i.       adopt, execute, deliver or file all plans, agreements, certificates and other documents and instruments necessary or appropriate to implement the Litigation Trust;

ii.       accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Specified Causes of Action (acting at the direction of the Litigation Trust Oversight Committee) and Retained Creditor Actions;

iii.       calculate and make distributions to Litigation Trust Beneficiaries, including distributing the Lender Distributions to the Second Lien Lenders as provided herein;

iv.       administer the Creditor Recoveries and make distributions to Holders of Allowed General Unsecured Claims in accordance with the Plan and the Litigation Trust Agreement;

v.       Establish reserves consistent with the Plan and Litigation Trust Agreement and invest Cash;

vi.       Object to, reconcile, seek to subordinate, compromise or settle any or all asserted General Unsecured Claims;

vii.       Retain and pay Disbursing Agents and professionals and other Entities;

viii.       Establish reserves and invest Cash out of the Litigation Trust Funds, the Litigation Proceeds and the Retained Creditor Action Proceeds (but, for the avoidance of doubt, not the Lender Distributions), including but not limited to establishing a reasonable reserve for the purpose of paying all reasonable Creditor Recoveries Expenses and the Litigation Expenses, including but not limited to, professionals to (a) prepare and file the Litigation Trust's tax returns for two years following the Effective Date, and (b) administer distributions of the Litigation Proceeds and Retained Creditor Action Proceeds as provided herein;

ix.       Abandon, in any commercially reasonable manner, any Litigation Trust Assets that in Litigation Trustee's reasonable judgment cannot be sold in a commercially reasonable manner or that the Litigation Trustee believes to have inconsequential value to the Litigation Trust, provided, however, that the abandonment of any Litigation Trust Assets related to the Specified Causes of Action requires the express written consent of a majority of the members of the Litigation Trust Oversight Board;

x.       File appropriate Tax returns and other reports on behalf of the Litigation Trust and pay Taxes (if any) or other obligations owed by the Litigation Trust; and

#44528003 v21

xi.        Wind-up the affairs of and dissolve the Litigation Trust.

c.        The Litigation Trust has no objective to, and will not, engage in a trade or business and will conduct its activities consistent with the Plan and the Litigation Trust Agreement.

d.        On the Effective Date, the Committee's counsel and professionals, and the Second Lien Agent's counsel and professionals, will provide to the Litigation Trustee (or such professionals designated by the Litigation Trustee) documents and other information gathered, and relevant work product developed, if any, during the Chapter 11 Cases in connection with their investigation of the Specified Causes of Action and Retained Creditor Actions, as applicable, provided that the provision of any such documents and information will be without waiver of any evidentiary privileges, including without limitation the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral).  The Plan will be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.

e.        The Litigation Trust and the Litigation Trustee will each be a "representative" of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code solely as related to the Litigation Trust Assets, and the Litigation Trustee will be the trustee of the Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), and, as such, the Litigation Trustee succeeds to all of the rights, powers and obligations of a trustee in bankruptcy with respect to collecting, maintaining, administering and liquidating the Litigation Trust Assets.  Without limiting other such rights, powers, and obligations, on the Effective Date, (i) the Committee will transfer, and will be deemed to have irrevocably transferred, to the Litigation Trust and shall vest in the Litigation Trust and the Litigation Trustee, the Committee's evidentiary privileges including, without limitation, the attorney-client privilege, work product privilege and other privileges and immunities that they possess, to the extent related to the Litigation Trust Assets; and (ii) the Litigation Trust, Litigation Trustee and Reorganized Debtor all shall be vested with and share the Debtors' evidentiary privileges including, without limitation, the attorney-client privilege, work product privilege and other privileges and immunities the Debtors possess, to the extent related to the Specified Causes of Action.  The Committee and its financial advisors, and the Debtors and their financial advisors upon reasonable request, will provide to the Litigation Trustee (or such professionals designated by the Litigation Trustee) originals or copies of documents, other information, and work product relating to the Specified Causes of Action, provided that the provision of any such documents and information will be without waiver of any evidentiary privileges or immunity.  Without limiting the foregoing, the Reorganized Debtor shall be vested with and retain all evidentiary privileges, including, without limitation, the attorney-client privilege, work product privilege and other privileges and immunities the Debtors possess, relating to Retained Causes of Action and other property of the Estates vesting in the Reorganized Debtor.

To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Debtors or the Reorganized Debtor, as the case may be, and the Litigation

-32-

Trustee shall be deemed, solely with respect to such Litigation Trust Assets, to have been designated as a representative of the Debtors, the Reorganized Debtor, or the Estates, as the case may be, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Debtors, the Reorganized Debtor, or the Estates, as the case may be.

      2.      Litigation Trustee.

The Litigation Trustee shall be the exclusive trustee of the Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), and solely with respect to the Litigation Trust Assets, the representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement. The Litigation Trust shall hold and distribute the Litigation Trust Assets in accordance with the provisions of the Plan and the Litigation Trust Agreement. Other rights and duties of the Litigation Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement.  The rights and powers of the Litigation Trustee shall be subject to the rights and powers of the Litigation Trust Oversight Board, solely with respect to the prosecution of the Specified Causes of Action, including with respect to the retention and compensation of counsel with respect thereto, as set forth in the Litigation Trust Agreement. After the Effective Date, the Reorganized Debtor shall have no interest in the Litigation Trust Assets other than as set forth herein.

      3.      Fees and Expenses of the Litigation Trust

On the Effective Date, the Debtors shall fund the Litigation Trust with the Litigation Trust Funds.  Unless otherwise agreed by the Litigation Trustee and the Supporting Lenders, (i) Creditor Recoveries Expenses and all other expenses of the Litigation Trust (other than as provided in clause (ii) below) shall be paid from the Creditor Recoveries and Litigation Trust Funds, and (ii) Litigation Expenses shall be paid from the Litigation Funding Amount, in the case of each of clauses (i) and (ii) in accordance with the Plan and the Litigation Trust Agreement, provided that in no event shall the Lender Distributions be available to the Litigation Trust or the Litigation Trustee other than to make the Distributions to Class 2 and Class 3 as contemplated by Article IV herein.  The Litigation Funding Amount may be funded by the Supporting Lenders in a lump sum or with periodic payments.  For the avoidance of doubt, (x) none of the Debtors, the Estates, or the Supporting Lenders shall have any liability for the fees and expenses of the Litigation Trust beyond the Litigation Funding Amount and the Litigation Trust Funds, and (y) the Reorganized Debtor shall have no liability for the fees and expenses of the Litigation Trust.

      4.      Proceeds of the Litigation Trust

Litigation Proceeds shall be allocated and paid as set forth in the Litigation Proceeds Waterfall Provision.

      5.      Limitation of Liability

#44528003 v21

None of the Litigation Trustee, the Litigation Trust Oversight Board or any of their respective members, designees, agents, advisors, representatives or professionals shall be liable for the act or omission of any other member, designee, agent, advisor, representative or professional, nor shall the Litigation Trustee or the Litigation Trust Oversight Board be liable for any act or omission taken or omitted to be taken in their respective capacities as Litigation Trustee or the Litigation Trust Oversight Board other than for specific actions or omissions resulting from their respective willful misconduct, gross negligence or fraud.  The Litigation Trustee and the Litigation Trust Oversight Board may, in connection with the performance of their respective functions, in their sole and absolute discretion, consult with their attorneys, accountants, advisors and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether or not such advice or opinions are in writing.  Notwithstanding such authority, neither the Litigation Trustee nor the Litigation Trust Oversight Board shall be under any obligation to consult with any such attorneys, accountants, advisors or agents, and their respective determinations not to do so shall not result in the imposition of liability on the Litigation Trustee, the Litigation Trust Oversight Board or any of their respective members, designees, agents, advisors, representatives or professionals unless such determination is based on willful misconduct, gross negligence or fraud.  Persons dealing with the Litigation Trustee shall look only to the Litigation Trust Assets (but not to any Lender Distributions) to satisfy any liability incurred by the Litigation Trustee to such person in carrying out the terms of the Plan or the Litigation Trust Agreement (except with respect to Retained Creditor Actions, with such Persons only able to look to Creditor Recoveries), and the Litigation Trustee shall have no personal obligation to satisfy such liability.

6.      Indemnification

The Litigation Trust shall indemnify the Litigation Trust Indemnified Parties for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost or expense (including the reasonable fees and expense of their respective professionals), incurred without gross negligence or willful misconduct on the part of the Litigation Trust Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a Final Order or a court of competent jurisdiction), for any action taken, suffered, or omitted to be taken by the Litigation Trust Indemnified Parties in connection with the acceptance, administration, exercise and performance of their duties under the Plan or the Litigation Trust Agreement, as applicable; provided, however, that any such indemnification shall not be payable from Lender Distributions.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct.

7.      Tax Treatment

The Litigation Trust generally is intended to be treated, for federal income Tax purposes, as a grantor trust that is a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. For U.S. federal income tax purposes, the transfer of the Litigation Trust Assets to the Litigation Trust will be treated as a transfer of the Litigation Trust Assets from the Debtors to the Litigation Trust Beneficiaries, followed by the Litigation Trust Beneficiaries' transfer of the

#44528003 v21

Litigation Trust Assets to the Litigation Trust in exchange for their beneficial interests in the Litigation Trust. The Litigation Trust Beneficiaries will thereafter be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Litigation Trust Assets. The Litigation Trust Beneficiaries shall include in their annual taxable incomes, and pay tax to the extent due on, their allocable shares of each item of income, gain, deduction, loss and credit, and all other such items shall be allocated by the Litigation Trustee to the Litigation Trust Beneficiaries using any reasonable allocation method. The Litigation Trustee will be required by the Litigation Trust Agreement to file income Tax returns for the Litigation Trust as a grantor trust of the Litigation Trust Beneficiaries. In addition, the Litigation Trust Agreement will require consistent valuation by [all parties, including the Debtors, the Reorganized Debtor,] the Litigation Trustee and the Litigation Trust Beneficiaries, for all federal income Tax and reporting purposes, of any property held by the Litigation Trust. The Litigation Trust Agreement will provide that termination of the trust will occur no later than five years after the Effective Date, unless the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Litigation Trust to complete its liquidating purpose. The Litigation Trust Agreement also will limit the investment powers of the Litigation Trustee in accordance with IRS Rev. Proc. 94-45 and will require the Litigation Trust to distribute at least annually to the Litigation Trust Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for Creditor Recoveries retained as reasonably necessary to maintain the value of the Litigation Trust Assets.

#44528003 v21

E.    *Books and Records Retention; Cooperation and Access to Books and Records*

Until a final order of judgment or settlement has been entered with respect to the Specified Causes of Action and any other litigation or contested matter initiated within two years after the Effective Date with respect to the Retained Creditor Actions, and until the Claims Objection Deadline with respect to any Disputed Claims, the Reorganized Debtor, the Litigation Trust and/or any transferee of the Debtors' or the Reorganized Debtor's books, records, documents, files, electronic data (in whatever format, including native format), or any tangible objects shall preserve and maintain such books and records relevant or potentially relevant to the Specified Causes of Action, the Retained Creditor Actions and the Disputed Claims, within the provisions of the Federal Rules of Civil Procedure, as if the Debtors or the Reorganized Debtor were parties to the applicable litigation or contested matter. Notwithstanding the foregoing, if the Reorganized Debtor determines that it no longer has any need for such books and records, it may destroy or abandon such books and records only if permitted to do so as a result of a final, non-appealable order of the Bankruptcy Court, entered after a hearing on reasonable notice to parties-in-interest, including the Litigation Trustee and counsel of record for all plaintiffs and defendants in such actions.

The Reorganized Debtor shall use commercially reasonable efforts to cooperate with the Litigation Trustee, at the Litigation Trustee's expense, in connection with its prosecution of the Specified Causes of Action and the Retained Creditor Actions, as well as objections to Disputed Claims, including with respect to promptly providing information as requested by the Litigation Trustee (including, reasonable access to the Debtors' and Reorganized Debtor's books and records).

F.    *No Revesting of Litigation Trust Assets*

No Litigation Trust Asset will revest in the Reorganized Debtor on or after the date such Litigation Trust Asset is transferred to the Litigation Trust, but irrevocably and automatically will vest in the Litigation Trust on the Effective Date, to be administered by the Litigation Trustee in accordance with the Plan and the Litigation Trust Agreement.

G.    *Issuance and Distribution of New GWO Interests.*

Upon entry of the Confirmation Order, the issuance of the New GWO Interests by Reorganized Debtor will be authorized without the need for any further corporate action and without any further action by the Holders of Claims or Interests.

On the Effective Date, all of the New GWO Interests shall be issued and distributed Pro Rata to the Holders of the Allowed Last Out Second Lien Secured Claims.

All of the shares of New GWO Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. The distribution and issuance of the New GWO Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

-36-

H.      *Restructuring Transactions.*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.

I.      *Corporate Existence.*

Except as described below and as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, GWO shall continue to exist after the Effective Date as the Reorganized Debtor and as a separate corporation, with all the powers of a corporation, pursuant to applicable Delaware law as the jurisdiction where GWO is incorporated and pursuant to its certificate of incorporation and by-laws (or other analogous formation or governing documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other analogous formation or governing documents) are amended by the Plan or otherwise amended in accordance with applicable law.  To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).

J.      *Merger or Dissolution of Co-Debtors, GWI, Holdings and Service.*

On the Effective Date, General Wireless Inc. ("GWI"), General Wireless Holdings Inc. ("Holdings") will be merged into GWO, which merged Entity shall be the Reorganized Debtor and General Wireless Customer Service, Inc. ("Service") will be dissolved in accordance with the Plan and applicable law.  GWI and Holdings shall be merged into GWO, and Service shall be deemed dissolved by the Debtors for all purposes, without the necessity for any other or further approvals or actions to be taken or obtained by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, in its sole discretion, the Debtors or Reorganized Debtor may (but shall not be required to) file with the Office of the Secretary of State for the applicable state a certificate of merger or dissolution, as the case may be.

K.      *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate that does not constitute a Litigation Trust Asset, including without limitation all Causes of Action that are not Litigation Trust Assets or otherwise expressly waived, relinquished, exculpated or released under the Plan or any Final Order, including the waiver of Remaining Avoidance Claims, and any property acquired by any of the Debtors pursuant to the Plan, except for the Fee Trusts, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances except for Liens securing the New Second Lien Secured Notes and the Exit Facility.  A non-exclusive list of Retained Causes of Action shall be filed with the Plan Supplement.

#44528003 v21

In addition to the Debtor Releases set forth in Article VIII herein, as of the Effective Date, the Debtors and the Reorganized Debtor shall be deemed to have forever released and waived the Remaining Avoidance Claims.

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and may prosecute, release, compromise or settle any Claims, Interests, or Causes of Action other than those comprising the Litigation Trust Assets, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

L.    *Cancellation of Existing Indebtedness and Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, including the New Second Lien Credit Agreement, the New Second Lien Secured Notes, the Exit Facility Credit Agreement and the Litigation Trust Agreement, on the Effective Date: (i) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, except the New Second Lien Credit Agreement, the Exit Facility Credit Agreement, the Litigation Trust Agreement and related documents, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled, and the Reorganized Debtor shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein, provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtor, except to the extent set forth in or provided for under this Plan.

M.    *Corporate Action.*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) entry into the New Corporate Governance Documents; (ii) the distribution of the New GWO Interests; (iii) selection of the directors and officers for the Reorganized Debtor as set forth herein; (iv) implementation of the Restructuring Transactions contemplated by this Plan; (v) merger of GWI and Holdings into GWO; (vi) dissolution of Service; (vii) execution and implementation of the Litigation Trust Agreement; and (viii) all other actions contemplated by

#44528003 v21

the Plan (whether to occur before on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and any corporate action required by the Debtors or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtor (as applicable) shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including the New Corporate Governance Documents, the New Second Lien Secured Notes, the Exit Facility Credit Agreement, the New Second Lien Credit Agreement, the New GWO Interests, the Litigation Trust Agreement and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.  The issuance of the New GWO Interests shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

N.      *New Certificate of Incorporation and New By-Laws.*

On or promptly after the Effective Date, the Reorganized Debtor will file its New Certificate of Incorporation with the Delaware Secretary of State and/or other applicable authorities in Delaware as its state of incorporation in accordance with the corporate laws of Delaware.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Certificate of Incorporation will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized Debtor may amend and restate its New Certificate of Incorporation and New By-Laws and other constituent documents as permitted by the laws of Delaware and the New Corporate Governance Documents.

The New Corporate Governance Documents shall be reasonably acceptable to the Reorganized Debtor and the Supporting Lenders.

O.      *Directors and Officers of the Reorganized Debtor.*

As of the Effective Date, the terms of the current members of each of the boards of directors of the Debtors shall expire, and the initial board of directors of the Reorganized Debtor, as well as the officers of the Reorganized Debtor shall be appointed in accordance with the below.  Following the Effective Date, the appointment and removal of the members of the board and the officers of the Reorganized Debtor shall be governed by the terms of the New Corporate Governance Documents.

The initial board of directors for the Reorganized Debtor will consist of [•] persons.  The Reorganized Debtor's initial officers and initial members of the board of directors shall be disclosed in the Plan Supplement.

P.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtor and its officers and directors are authorized to and may issue, execute, deliver, file, or record such contracts securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan, the New Corporate Governance Documents, the Exit Facility, the Exit Facility Credit Agreement, the New Second Lien Credit Agreement, the New Second Lien Notes, and the New GWO Interests, in the name of and on behalf of the Reorganized Debtor without the need for any approvals, authorization or consents, except for those expressly required under the Plan, the Exit Facility, the Exit Facility Credit Agreement, the New Second Lien Credit Agreement, the New Corporate Governance Documents, the Litigation Trust Agreement or other applicable documents.

Q.      *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed of trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any Restructuring Transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale (e) the transfer of Litigation Trust Assets into the Litigation Trust, or (f) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

R.      *Indemnification Provisions.*

As of the Effective Date, the New Corporate Governance Documents shall provide, to the extent not satisfied by any available insurance coverage, for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current (as of the Petition Date) directors, officers or employees who were employed as directors, officers or employees of such Debtor, on or after the Petition Date at least to the same extent as the bylaws (or other formation documents) of such Debtor on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtor shall not amend and/or restate the New Corporate Governance Documents before or after the Effective Date to terminate or materially adversely affect the Reorganized Debtor's obligations or such directors', officers' or employees' rights except as permitted under applicable law; provided, however, that there shall be no indemnification, defense, reimbursement, exculpation, liability,

-40-

or advancement of fees and expenses by the Reorganized Debtor with respect to Subordinated Claims.

S.    *Preservation of Causes of Action.*

Unless any Causes of Action against an Entity are transferred to the Litigation Trust as Litigation Trust Assets, or expressly waived, relinquished, exculpated, or released in the Plan or any Final Order, including the waiver of Remaining Avoidance Claims, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including without limitation any Retained Causes of Action, whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtor's right to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Except as otherwise expressly provided herein, for the avoidance of doubt, and except as relating to Allowed Class 2 and Class 3 Claims pursuant to the Plan, the preservation of Causes of Action described in the preceding sentence includes, but is not limited to, the Debtors' or the Reorganized Debtor's (i) right to object to Administrative Claims, (ii) right to object to Claims (other than General Unsecured Claims) or otherwise assert any defenses, rights of setoff or recoupment or counterclaim with respect to such Claims, and (iii) right to subordinate Claims.  The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor in its discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available Causes of Action against it.  The Debtors and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

Unless any Causes of Action against an Entity are transferred to the Litigation Trust as a Litigation Trust Assets or expressly waived, relinquished, exculpated, allowed or released in the Plan or any Final Order, including the waiver of Remaining Avoidance Claims, the Reorganized Debtor reserves and shall retain the applicable Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Reorganized Debtor through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action except as otherwise expressly provided in the Plan and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

T.    *Intercompany Claims*

Notwithstanding anything in this Plan to the contrary, on or after the Effective Date, any Intercompany Claims shall be Reinstated, or discharged and satisfied, at the option of the Reorganized Debtor by contributions, distributions, or otherwise or as may be advisable in order

to avoid the incurrence of any past, present or future tax or similar liabilities by the Reorganized Debtor.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, Executory Contracts and Unexpired Leases, including those listed on the Rejected Executory Contract and Unexpired Lease List as of the Effective Date, shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (i) was assumed, assumed and assigned, or rejected prior to the Effective Date by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) is identified as an Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Lease List.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease List as of the Effective Date shall be Assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (i) was assumed, assumed and assigned, or rejected prior to the Effective Date by the Debtors; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to reject Filed on or before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption or rejection, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Leases List or the Assumed Executory Contract and Unexpired Leases List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or written agreement between the Debtors and the applicable counterparty.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

Any and all Claims for damages arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases must be Filed in accordance with the terms of the Final Order authorizing such rejection and the Bar Date Order, but in no event later than thirty (30) days after the Effective Date to the extent an earlier time has not been established by the Bankruptcy Court. Any Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease that is not Filed within such time period will be forever barred from assertion against the Debtors, the Reorganized Debtor or the Litigation Trust.

#44528003 v21

Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as GWI General Unsecured Claims, GWH General Unsecured Claims or GWO/GWCS General Unsecured Claims, as applicable, and shall be treated in accordance with Article III of the Plan, as applicable.

B.    *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease as reflected on the Assumed Executory Contract and Unexpired Leases List shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (i) the amount of the Cure Claim, (ii) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (iii) any other matter pertaining to assumption, the Cure Amount payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption, or the assumption and assignment, or by mutual agreement between Debtors and the applicable counterparty.  At least 14 days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption, and proposed amounts of Cure Claims to the applicable third parties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least three days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and cure amount; provided, however, the Debtors shall have the right to alter, amend, modify or supplement the Assumed Executory Contracts and Unexpired Lease List or Rejected Executory Contracts and Unexpired Lease List, as applicable, as identified in the Plan Supplement, through and including the Effective Date.  To the extent that the Debtors alter, amend, modify or supplement the lists of Executory Contracts and Unexpired Leases included in the Plan Supplement, the Debtors will provide notice to each counterparty to an affected Executory Contract or Unexpired Lease within three business days of such decision, and any objection of such party to a proposed assumption, assumption and assignment, or related Cure Amount relating to such Executory Contract of Unexpired Lease shall be Filed within 14 days of the date of service of such notice.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date  the Debtors or Reorganized Debtor assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

#44528003 v21

C.      *Insurance Policies.*

All of the Debtors' Insurance Contracts and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto unless such Executory Contract (i) was assumed, assumed and assigned, or rejected prior to the Effective Date by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject Filed on or before the Effective Date; (iv) is identified as an Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Lease List, or (v) is the subject of a dispute regarding the Cure Claim.

Notwithstanding anything to the contrary contained herein, to the extent the Debtors have insurance with respect to any Allowed General Unsecured Claim, the holder of such Allowed Claim shall (a) be paid any amount from the proceeds of insurance to the extent that the Claim is insured, and (b) receive the treatment provided for in this Plan for such Allowed General Unsecured Claims to the extent of that portion of the Claim for which the applicable insurance policy does not provide coverage.

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release, including, but not limited to, the injunctions set forth in Article VIII hereof): (a) on the Effective Date, the Reorganized Debtor shall assume all Insurance Contracts; (b) nothing in the Disclosure Statement, the Plan, the Plan Supplement or the Confirmation Order alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the Insurance Contracts, except that as of the Effective Date, the Reorganized Debtor shall become and remain liable for all of the Debtors' obligations and liabilities thereunder regardless of whether such obligations and liabilities arise before or after the Effective Date; (c) nothing in the Disclosure Statement, the Plan, Plan Supplement, the Confirmation Order, any prepetition or administrative claim bar date order (or notice) or claim objection order alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by the Insurance Contracts and their right to seek payment or reimbursement from any Debtor (or after the Effective Date, the Reorganized Debtor) or draw on any collateral or security therefor; (d) insurers and third party administrators shall not need to nor be required to File or serve any objection to a Cure Notice or a request, application, Claim, Proof of Claim or motion for payment and shall not be subject to the any Claims Bar Date or similar deadline governing Cure Amounts or Claims; and (e) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII hereof, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (A) claimants with valid claims covered by any of the Insurance Contracts ("Insured Claims") to proceed with their claims; (B) insurers and/or third party administrators to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (i) all Insured Claims, and (ii) all costs in relation to each of the foregoing; (C) the insurers and/or third party administrators to draw against any or all of any collateral or security provided by or on behalf of the applicable Debtor (or the Reorganized Debtor, as applicable) at any time and to hold the proceeds thereof as

-44-

security for the obligations of such Debtor (and the Reorganized Debtor, as applicable) to the applicable insurers and/or third party administrators and/or apply such proceeds to the obligations of such Debtor (and the Reorganized Debtor, as applicable) under the Insurance Contracts, in such order as the applicable insurers and/or third party administrators may determine; and (D) the insurers and/or third party administrators to (i) cancel any policies under the Insurance Contracts, and (ii) take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Insurance Contracts.

D.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.    *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease List or the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If, prior to the Effective Date, there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, assumption and assignment, or rejection, the Debtors, or Reorganized Debtor, as applicable, in consultation with the Supporting Lenders, shall have 28 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

F.    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

G.    *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor (or assumed and assigned to the Reorganized Debtor), will be performed by the Reorganized Debtor in the ordinary course of

its business.   Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that have not been released or satisfied in full as of the Confirmation Date or under the Plan or Confirmation Order will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing of Distributions*

Distributions shall be made as soon as reasonably practicable after the later of the Effective Date or the date that such Claim becomes an Allowed Claim, notwithstanding anything to the contrary in the Plan or Confirmation Order.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

B.      *Disbursing Agent.*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the applicable Disbursing Agent on the Effective Date.  To the extent the Disbursing Agent is the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

-46-

C.      *Interest and Penalties on Claims*

Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to any interest, dividend, penalty or accrual on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.      *De Minimis Distributions*

Notwithstanding anything in the Plan to the contrary, the applicable Disbursing Agent shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim on any given Distribution Date is less than $50.00, and such amount shall be distributed Pro Rata to other Holders of Allowed Claims entitled to a Distribution on such Distribution Date in accordance with the terms of the Plan. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed on any given Distribution Date is less than $50.00 shall be forever barred from asserting any Claim with respect to such eliminated Distribution against any Estate Assets.

E.      *Fractional Distributions*

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

F.      *No Distributions with Respect to Certain Claims*

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any contingent Claim, Disputed Claim, or unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim.  Claims Allowed against multiple Debtors on account of the same underlying obligation shall not receive duplicate satisfactions or Distributions.

G.      *Rights and Powers of Disbursing Agent.*

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof or with respect to the Litigation Trustee, pursuant to the Litigation Trust Agreement.

2.      Expenses Incurred On or After the Effective Date.

-47-

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent, shall be paid in Cash by the Reorganized Debtor where it is acting as Disbursing Agent, or by the Litigation Trust where it or the Litigation Trustee is acting as Disbursing Agent in accordance herewith.

H.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Delivery of Distributions.

Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  Distributions to each Holder of Allowed Claims shall be made (a) at the address set forth in the applicable Proof of Claim Filed by such Holder, (b) at the address reflected in the Schedules if no Proof of Claim has been filed, or (c) at the address set forth in any change of address notice delivered in writing to the Reorganized Debtor or the Litigation Trustee, as applicable, by such Holder.  The Debtors, the Reorganized Debtor, the Litigation Trust, the Litigation Trustee and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any Distributions under the Plan except for gross negligence or willful misconduct.

2.    Undeliverable Distributions and Unclaimed Property.

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred twenty (120) days from the later of (i) the Effective Date and (ii) the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor or the Litigation Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder or other Entity to such property or interest in property shall be discharged and forever barred.

I.    *Manner of Payment.*

1.    All Distributions of New GWO Interests under the Plan shall be made by the Reorganized Debtor.

2.    All Distributions under the Plan to the Holder of any Allowed Claim shall be made by the Disbursing Agent on behalf of the Reorganized Debtor or the Litigation Trust, as the case may be.

-48-

3.     At the option and in the sole discretion of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer; provided, however, that in the case of each of the Second Lien Lenders, any Cash Distributions shall be made by wire. Requests for reissuance of any check must be made within sixty (60) days after the date of issuance thereof, and such request shall be made directly to the Reorganized Debtor or the Litigation Trustee, as applicable.

J.     *Section 1145 Exemption.*

The Holders of the Allowed Class 3 Last Out Second Lien Secured Claims will receive shares of New GWO Interests pursuant to the Plan.  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New GWO Interests as contemplated by Article IV.F of the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities.

In addition, under section 1145 of the Bankruptcy Code, such New GWO Interests will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the New Corporate Governance Documents, including the New Certificates of Incorporation.

K.     *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtor and the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor, the Litigation Trustee, and any Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, but not limited to, requiring each Holder of a Claim to provide it with an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Reorganized Debtors or the Litigation Trustee, as applicable, in connection with such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Reorganized Debtors or the Litigation Trustee, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

L.      *Forfeiture of Distributions*

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Article VI.I, fails to claim an undeliverable Distribution within the time limit set forth in Article VI.H, or fails to complete and return to the Reorganized Debtor or the Litigation Trustee, as applicable, the appropriate Form W-8 or Form W-9 within sixty (60) calendar days after a request for the completion and return of the appropriate form pursuant to Article VI.K, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions, and the Claims of such Holder shall be waived, discharged and forever barred without further order of the Bankruptcy Court.  Any such forfeited Distributions that would have been paid to the Holder of such Claim shall be deemed to have reverted back to the Reorganized Debtors or Litigation Trust, as applicable, for all purposes, including, but not limited to, for Distribution to Holders of other Allowed Claims, notwithstanding any federal or state escheat laws to the contrary.

M.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

N.      *Setoffs and Recoupment.*

Except as otherwise provided under the Plan, the Debtors or the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors, the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable, may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable, of any claim it may have against the Holder of such Claim.

O.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The Debtors, the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not Debtors, the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not Debtors, the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable, on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtor or the Litigation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such

distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtor or the Litigation Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

       2.      Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Reorganized Debtor, or any Entity, including but not limited to the Litigation Trust or Litigation Trustee, may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

*A.*     *Prosecution of Objections to Claims.*

The Litigation Trust shall have the exclusive authority to File, settle, compromise, withdraw or litigate to judgment any objections to General Unsecured Claims. The Debtors or the Reorganized Debtor, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw or litigate to judgment any objections to all other Claims, other than Fee Claims, as provided under the Plan (with Fee Claims being subject to objection by any Person with standing to object) provided, however, for the avoidance of doubt, the U.S. Trustee shall have standing to object to Fee Claims.  From and after the Effective Date, the Reorganized Debtor and the Litigation Trust, as applicable, may settle or compromise any Disputed Claim without notice to or action, order or approval of the Bankruptcy Court.  The Debtors, the Reorganized Debtor, the Litigation Trust, and the Litigation Trustee reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

*B.*     *Claims Administration Responsibilities.*

The Debtors, the Reorganized Debtor, the Litigation Trust and Litigation Trustee, as applicable, may, in their discretion, File with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or any other appropriate

motion or adversary proceeding with respect thereto, and the Debtors, the Reorganized Debtor the Litigation Trust and Litigation Trustee, as applicable, shall have the right to compromise, settle, withdraw or litigate to judgment any objections to such Claims.  Any objections to Claims, other than Fee Claims and Administrative Claims, shall be served and Filed on or before the Claims Objection Deadline, which date may be extended by entry of an order by the Bankruptcy Court on motion of the Reorganized Debtor, Litigation Trust or the Litigation Trustee.  The Claim Objection Deadline shall automatically be extended as provided by Local Rule 9006-2 upon the Filing of a motion by the Reorganized Debtor or the Litigation Trustee, as applicable, requesting an extension of the Claim Objection Deadline.

C.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Reorganized Debtor, the Litigation Trust or the Litigation Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor or the Litigation Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims Without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may, in accordance with the Bankruptcy Code and Bankruptcy Rules, be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtor or the Litigation Trustee, as applicable, without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Other than the Allowed Secured Lender Claims, any Claims held by Entities who are defendants in any Cause of Action and from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been

#44528003 v21

entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtor.  All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *No Distributions to Holders of Disputed Claims.*

Notwithstanding any other provision of the Plan, (1) no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever and (2) except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. On the Distribution Date that is at least 30 days after a Disputed Claim becomes an Allowed Claim (or such lesser period as the Disbursing Agent may determine), the Holder of such Claim shall receive the distribution (if any) to which such Holder would have been entitled under the Plan as of the Effective Date (including any payments such Holder would have been entitled to on the Distribution Date on which such Holder is receiving its initial payment) if such claim had been Allowed as of the Effective Date, without any interest to be paid on account of such Claim.

G.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. On the date that is at least 30 days after a Disputed Claim becomes an Allowed Claim (or such lesser period as the Disbursing Agent may determine), the Holder of such Claim shall receive the Distribution (if any) to which such Holder would have been entitled under the Plan as of the Effective Date (including any payments such Holder would have been entitled to on the date on which such Holder is receiving its initial payment) if such claim had been Allowed as of the Effective Date, without any interest to be paid on account of such Claim.

**ARTICLE VIII.
SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of substantially all Claims, Interests, and controversies relating to the contractual, legal, and equitable rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise

or settlement is in the best interests of the Debtors, the Estates, and Holders, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle claims and Causes of Action against other Entities.

B.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests.

C.      *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including with respect to the New Second Lien Secured Notes and the Exit Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Allowed Other Secured Claim, satisfaction in full of the portion of such Allowed Other Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor.

-54-

D.      *Releases by the Debtors.*

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, as of the Effective Date of the Plan, the Debtors, on behalf of themselves and their Affiliates, the Estates and their respective successors and assigns, and any and all Entities who may purport to claim by, through, on behalf of or for the benefit of any of the Debtors or the Estates, expressly, unconditionally, irrevocably, generally, and individually and collectively release, acquit and discharge each Released Party from any and all actions, claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, by statute or otherwise, that such releasing party ever had, now has, or hereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, any forbearance agreement, or related agreements, instruments, or other documents, or any other act or omission, transaction, transfer, agreement, event, or other occurrence relating to the Debtors, taking place on or before the Effective Date of the Plan, including any Released Claims, other than with respect to Claims or liabilities arising out of or relating to any act or omission of such Released Party unknown to the Debtors as of the Effective Date that constitute gross negligence, willful misconduct, or actual fraud, in each case as determined by Final Order of a court of competent jurisdiction.

E.      *Releases by Holders of Claims and Interests*

As of the Effective Date of the Plan, each Holder of a Claim or Interest shall be deemed to have expressly, unconditionally, irrevocably, generally, and individually and collectively, released, acquitted, and discharged each Released Party from any and all actions, claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, by statute or otherwise, that such Holder (whether individually or collectively) ever had, now has, or hereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure

-55-

**Statement, any forbearance agreement, or related agreements, instruments, or other documents, or any other act or omission, transaction, transfer, agreement, event, or other occurrence relating to the Debtors, taking place on or before the Effective Date of the Plan, including any Released Claims, other than with respect to Claims or liabilities arising out of or relating to any act or omission of such Released Party unknown to such Holder as of the Effective Date that constitute gross negligence, willful misconduct, or actual fraud, in each case, as determined by Final Order of a court of competent jurisdiction. The provisions of this Article VIII.E, and subparagraph (d) in the definition of Exculpated Parties, are subject to the approval of the Bankruptcy Court in connection with confirmation of this Plan, and may be limited, with the consent of the Supporting Lenders, in connection therewith; provided further that these provisions may be deleted from the Plan with the consent of the Supporting Lenders at any time prior to entry of any Confirmation Order.**

F.    *Exculpation.*

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Entity, including to any Holder of a Claim or an Interest, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for those that result from any such act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and the administration thereof.**

G.    *Injunction.*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION DISCHARGED, RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE DISCHARGE AND THE RELEASES AND EXCULPATION GRANTED IN ARTICLE VIII HEREOF, ALL ENTITIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT

OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY DISCHARGED, RELEASED OR EXCULPATED OR TO BE RELEASED OR EXCULPATED PURSUANT TO ARTICLE VIII HEREOF.

WITHOUT LIMITING THE FOREGOING, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN DISCHARGED PURSUANT TO ARTICLE VIII.B OR RELEASED PURSUANT TO ARTICLE VIII.D OR ARTICLE VIII.E, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.F ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTOR, THE RELEASED PARTIES OR THE EXCULPATED PARTIES: (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (ii) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (iv) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS DISCHARGED, RELEASED OR SETTLED PURSUANT TO THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

EXCEPT AS EXPRESSLY SET FORTH HEREIN, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, OR THE REORGANIZED DEBTOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

#44528003 v21

H.      *Liabilities to, and Rights of, Governmental Units.*

Nothing in the Plan or Confirmation Order shall discharge, release, or preclude: (i) any liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtor; (iv) any valid right of setoff or recoupment by a Governmental Unit; or (v) any criminal liability.  Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

I.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

1.      The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not be stayed.

2.      Any amendments, modifications,  or supplements to the Plan (including the Plan Supplement), if any, shall be reasonably acceptable to the Supporting Parties.

3.      All actions, documents, certificates, and agreements necessary to implement this Plan, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

4.      The Litigation Trust shall have been created by execution of the Litigation Trust Agreement and funded with the Litigation Trust Funds in Cash.

5.      All Governmental Unit approvals or other approvals required to effectuate the terms of the Plan, including the Plan Supplement, have been obtained.

6.    The Reorganized Debtor shall have closed on the Exit Facility, pursuant to the Exit Facility Credit Agreement, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

7.    All professional fees and expenses of the Second Lien Agent, the Second Lien Lenders, the DIP Facility Agent and the DIP Facility Lenders have been paid in full in Cash.

8.    Unless waived by the Supporting Lenders, the aggregate amount of the Allowed Administrative Claims and Allowed Priority Claims (other than Accrued Professional Compensation Claims to the extent consistent with the and other such Claims secured by escrowed funds) that have not been, or will not be, satisfied in the ordinary course of business shall not exceed (or shall be estimated as of the Effective Date not to exceed) $2,500,000.

B.    *Waiver of Conditions.*

The conditions to Consummation set forth in Article IX may be waived by the applicable Supporting Parties, and if applicable, any other Person entitled to satisfaction of such condition, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.    *Effect of Failure of Conditions.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims or Causes of Action by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be: (1) made in accordance with this Article X; and (2) in form and substance reasonably acceptable to the Supporting Parties.

B.    *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the determination of a whether a Claim shall be deemed a Subordinated Claim in connection with the Plan;

3.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

4.    resolve any matters related to:  (a) the assumption or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Executory Contracts and Unexpired Leases to be assumed, rejected or

-60-

otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

5.        ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

6.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

7.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.        adjudicate, decide, and resolve any and all Causes of Action arising under the Bankruptcy Code;

9.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

10.        enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1 hereof;

15.        enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.    enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

18.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.    consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising in connection with the implementation of the agreements, documents, or instruments executed in connection with the Plan;

22.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII hereof;

24.    enforce all orders previously entered by the Bankruptcy Court, resolve any cases, controversies, suits, or disputes that may arise in connection with any Entity's rights arising from or obligations incurred in connection with the Plan; and

25.    hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions

described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtor, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, (i) the Committee shall be automatically dissolved, and (ii) each member of the Committee, solely in their capacity as such (including each member's advisors, members, and professional persons, in each case solely in their capacity as such) and each Professional retained by the  Committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on the Committee, the Plan, or the Chapter 11 Cases, except with respect to any matters concerning any Fee Claims held or asserted by any Professional retained by the Committee.  The Reorganized Debtor shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the Committee or its professionals.

D.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders before the Effective Date.

E.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices.*

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by email transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email transmission, when received, addressed to the following:

#44528003 v21

If to the Debtors:

General Wireless Operations Inc. dba RadioShack
Attn: Bradford A. Tobin
General Counsel
300 RadioShack Circle
Fort Worth, TX 76102-1964
E-mail address: Bradford.Tobin@radioshack.com


**With copies to:**

Pepper Hamilton LLP
1313 N. Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Attention: David M. Fournier
E-mail address: fournied@pepperlaw.com

After the Effective Date, the Reorganized Debtor may, in its sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.    *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims Agent or the Bankruptcy Court's website at http://www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.    *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter

and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, the New Corporate Governance Documents, the Restructured Second Lien Note, and the Exit Facility Credit Agreement, as any of such documents may have been altered or interpreted in accordance with the foregoing, are: (i) valid and enforceable pursuant to their terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the parties thereto; and (iii) non-severable and mutually dependent.

J.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e), 1125(g), and 1126(b) of the Bankruptcy Code, the Debtors and each of their respective Related Parties will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals, or the Reorganized Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

K.      *Closing of Chapter 11 Cases.*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

L.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

*[Remainder of page intentionally left blank]*

#44528003 v21

Dated: September 6, 2017
       Wilmington, Delaware

                                        **GENERAL WIRELESS OPERATIONS INC.,**
                                        on behalf of itself and each of the other Debtors

                                        By: /s/
                                        Name:  Bradford A. Tobin
                                        Title:   Senior Vice President and General Counsel

COUNSEL:


/s/  *David M. Fournier*
**PEPPER HAMILTON LLP**
David M. Fournier (DE 2812)
Michael J. Custer (DE 4843)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: fournierd@pepperlaw.com
       custerm@pepperlaw.com

-and-

**JONES DAY**
Scott J. Greenberg (admitted pro hac vice)
250 Vesey Street
New York, NY 10281-1047
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: sgreenberg@jonesday.com

Mark A. Cody (admitted pro hac vice)
77 West Wacker
Chicago, IL 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: macody@jonesday.com

*Attorneys for Debtors and Debtors in Possession*


-66-

#44528003 v21